United States District Court
Southern District of Texas
FILED

FEB 2 4 2011

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS COMMUNITY BANK, N.A. | § | |
| | § | |
| v. | § | |
| | § | |
| M/V NEFTEGAZ, Her Engines, Tackle, | § | **CIVIL ACTION:** |
| Appurtenances, etc., *in rem*, and WILLIAM | § | |
| C. KELLEHER, in personam | § | Rule 9(h)–Admiralty |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Texas Community Bank, N.A. and for its Verified Complaint would respectfully show as follows:

## PARTIES

1. Texas Community Bank, N.A. (the "Bank") is a Texas-based national banking association, with its principal place of business at 16610 I-45, The Woodlands, Texas 77384. It can be served for all purposes in this litigation through its attorneys of record, Cokinos, Bosien & Young, Four Houston Center, 1221 Lamar Street, 16th Floor, Houston, Texas 77010-3039.

2. Defendant *in rem*, the M/V NEFTEGAZ, hull number PCX14018D606 (the "Vessel"), is a 48.1-foot recreational racing sailboat that is now present within the jurisdiction of the Southern District of Texas. The M/V NEFTEGAZ is a documented vessel for which a certificate of documentation has been issued by the United States Coast Guard, National Vessel Documentation Center, pursuant to 46 U.S.C. §12101 *et seq.*

3. Defendant *in personam* William C. Kelleher ("Mr. Kelleher") is an individual residing at, upon information and belief, 18 Mariners Lane, Kemah, Texas 77565, who may be personally served at his place of residence or wherever else he may be found.

## JURISDICTION AND VENUE

4.     This is an admiralty and maritime claim within the jurisdiction of the United States and this

Court pursuant to Article III, Section II of the United States Constitution, 28 U.S.C. §1333, and Rule

9(h) of the Federal Rules of Civil Procedure, and within the meaning of Rule C of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   This is an action to enforce

a preferred ship mortgage pursuant to 46 U.S.C. §31325.

5.     The loan, promissory note, and preferred mortgage made the subject of this litigation were

made and performable in The Woodlands, Montgomery County, Texas, which is within the Southern

District of Texas.   Further, upon information and belief, the Vessel is currently out of water being

stored at Gulf Coast Composites, 2301 Anders Lane, Kemah, Texas 77565, within the Southern

District of Texas.

6.     The Promissory Note dated February 1, 2008 made by Mr. Kelleher for the benefit of the

Bank (the "Note"), which is the basis of this litigation, elects the United States District Court for the

Southern District of Texas, Houston Division, as a proper venue for any action thereunder.   In the

Note, Mr. Kelleher and the Bank expressly submitted to the jurisdiction of the federal courts of the

State of Texas.   A true and correct copy of the Note is attached as Exhibit "A" to the concurrently

served affidavit of the Bank's Vice President, Lee Prince, and the terms of the Note are incorporated

herein by reference.

7.     The Preferred Mortgage made by Mr. Kelleher for the benefit of the Bank dated February 1,

2008 (the "Mortgage") satisfies the requirements of 46 U.S.C. §31322, and complies with 46 U.S.C.

§31321(a)(1)(A) in that enforcement is sought against the mortgagor. A true and correct copy of the

Mortgage is attached as Exhibit "B" to Mr. Prince's concurrently served affidavit.   The terms of the

Mortgage are incorporated herein by reference.

## FACTS

8.     On February 1, 2008, Defendant Mr. Kelleher received a loan from the Bank in exchange for the Note, in the principal amount of Five Hundred Eighty-Five Thousand and No/100 Dollars ($585,000). The Note provides for interest at the rate of seven and one-half percent (7.5%) per annum. Payments of principal and interest were due monthly, with the Note to be paid in full after sixty (60) consecutive monthly installments (subject to a single extension granted by the Bank for the September 1, 2008 payment).

9.     To secure the Note, Mr. Kelleher further delivered to the Bank the Mortgage pledging the Vessel as collateral. The Mortgage is in the amount of Five Hundred Eighty-Five Thousand Dollars ($585,000) plus interest and performance of mortgage covenants. The Mortgage identifies the Vessel by its hull number.

11.     Defendant Mr. Kelleher did make some payments to the Bank pursuant to the terms of the Note. However, as set forth in Mr. Prince's concurrently served affidavit, no payments have been received by the Bank since July 19, 2010. Accordingly, Mr. Kelleher is in default under the Note for failing to make payments of principal and interest due on 1st of September, 2010 through February, 2011. As of February 18, 2011, the outstanding principal totaled $534,309.80, and unpaid interest amounted to $22,348.90. The outstanding balance continues to accrue interest at a *per diem* rate of $111.3145.

12.     Further, Paragraph 3 of the Mortgage provides that Mr. Kelleher will keep the Vessel fully insured throughout the duration of the Mortgage, with the Bank being designated as loss payee on such insurance policies. While it appears Mr. Kelleher did maintain insurance on the Vessel for some time, on information and belief Mr. Kelleher allowed that coverage to lapse or did not renew it as required. This constitutes a separate event of default on the Mortgage. At the very least, Mr.

Kelleher failed to properly notify the Bank of any change in the insurance or deliver to the Bank evidence of current insurance, as are also required by Paragraph 3 of the Mortgage. These breaches entitle the Bank to appropriate remedial action.

13.     Pursuant to the Note and Mortgage Mr. Kelleher waived all notices of default, acceleration or intent to foreclose, and demands for payment or presentment prior to the Bank exercising its remedies. In the last sixty days, upon information and belief, Mr. Kelleher has moved the Vessel twice, from a warehouse to a boat slip and then to a repair yard. Upon further information and belief, Mr. Kelleher may have relocated to California. Each of these factors places the Bank on notice of the potential for Mr. Kelleher to leave this Court's jurisdiction with the Bank's collateral, and thus underscores the need for the Bank to seek judicial action to foreclose its Mortgage and seek the arrest of the *in rem* defendant.

14.     The Note, Mortgage, and applicable law require that certain conditions precedent be satisfied in order for the Bank to proceed with an action against Mr. Kelleher and/or the Vessel. All such conditions precedent have occurred or been waived.

15.     Due to Mr. Kelleher's default and failure to perform as required by the Note, it has been necessary for the Bank to retain the undersigned counsel and incur costs and expenses in collection of sums due and owing. The Note provides that Mr. Kelleher shall pay, and the Bank is entitled to, an additional amount equal to fifteen percent (15%) of the principal and interest then due, as attorney's fees. In addition, the Bank is entitled to recover from Mr. Kelleher all other costs and expenses incurred in collection of the Note by its terms. Further, and in the alternative, Texas Civil Practice & Remedies Code §38.001(8) allows the Bank to recover reasonable attorney's fees.

VERIFIED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

## COUNT I
## Mortgage Foreclosure

16.      Article II, Section 1(a) of the Mortgage provides that "[d]efault in the punctual payment of the

principal of the Note secured hereby or any installment thereof…" constitutes an "event of default"

under the Mortgage.  In Article II, Section 1(d)(i), the Mortgage allows the Bank to accelerate the

entire principal of the Note and all accrued interest upon an event of default.  Further,  the Bank may

retake the vessel without prior demand, hold the vessel, and sell the vessel upon the occurrence of

an event of default according to Section 1(d)(iii).  Finally, Section 1(d)(iv) allows the Bank to exercise

all rights of foreclosure under the Ship Mortgage Act upon Mr. Kelleher's default.  The Bank now

seeks to exercise its contractual and statutory rights as a remedy to the defaults indicated herein.  For

purposes of foreclosure on and sale of the Vessel, the Bank assets, upon information and belief, that

the Vessel is currently located at a facility identified as Gulf Coast Composites, 2301 Anders Ln.,

Kemah, TX 77565.

## COUNT II
## Breach of Note

17.      Based upon the foregoing, Mr. Kelleher has breached his Note obligations to the Bank for

which judgment is demanded for unpaid principal, pre- and post-judgment interest, cost and attorney

fees.

## **PRAYER**

WHEREFORE, Plaintiff Texas Community Bank, N.A. prays:

a)      process *in rem* in due form of law according to the practices of this Court in cases of
         admiralty and maritime jurisdiction issue against the M/V NEFTEGAZ, and her
         appurtenances, and that she be seized pursuant to Rule C of the Supplemental Rules
         of Admiralty or Maritime Claims and Asset Forfeiture Actions;

b)      a summons issue to the *in personam* Defendant, William C. Kelleher, citing him to
         appear and answer;

VERIFIED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

c)      the preferred Mortgage lien of Plaintiff be recognized and enforced with preference and priority over all persons whomsoever;

d)      the Court enter judgment for Texas Community Bank, N.A. and against the M/V NEFTEGAZ, *in rem*, and against William C. Kelleher, *in personam*, jointly and severally, in amounts to be proven but no less than $534,309.80, plus pre- and post-judgment interest, late fees, collection fees, the costs associated with the arrest of the vessel, to include any costs incurred by the United States Marshal, and costs of court, including fifteen percent (15%) of the total principal and interest then due for attorneys fees, or, in the alternative, reasonable attorneys fees;

e)      that the Vessel and all its appurtenances be sold to satisfy said judgment; and

f)      that the Court grant all other and further relief to which Texas Community Bank, N.A. may be entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG

BY: _____

CHARLES W. GETMAN
Bar No.07831200
Fed. ID No.6348
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas 77010-3039
(713) 535-5500
Fax:  (713) 535-5533
cgetman@cbylaw.com

OF COUNSEL:

COKINOS, BOSIEN & YOUNG
MATTHEW D. PENNY
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas 77010-3039
(713) 535-5500
Fax:  (713) 535-5533

F:\WPDOCS\2569035\Pleadings\mdp complaint rev 02 21.wpd

VERIFIED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TEXAS COMMUNITY BANK, N.A.

v.

M/V NEFTEGAZ, Her Engines, Tackle,           **CIVIL ACTION:**
Appurtenances, etc., *in rem*, and WILLIAM
C. KELLEHER, *in personam*                    Rule 9(h)–Admiralty

**VERIFICATION AND AFFIDAVIT**
**PURSUANT TO ADMIRALTY RULE C**

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

BEFORE ME, the undersigned authority, personally came and appeared Lee Prince, Vice

President of Texas Community Bank, N.A., who, after being first duly sworn, did depose and say

as follows:

"My name is Lee Prince, and I am a Vice President at Texas Community Bank, N.A. I am

over the age of eighteen (18) years, have never been convicted of a crime of moral turpitude, am of

sound mind, and capable of making this affidavit. All testimony in this affidavit is true and correct

and based on my personal knowledge except where stated upon information and belief, and where

so stated I believe same to be true.

"I have read the above and foregoing Verified Complaint and the allegations thereof are true

and correct. The Note attached hereto as Exhibit "A" and the Mortgage attached hereto as Exhibit

"B" are true, correct, complete and accurate copies of the Note and Mortgage made by Mr. Kelleher

for the benefit of the Bank. Texas Community Bank, N.A. is the current lawful owner and possessor

of both the Note and the Mortgage.

"Mr. Kelleher made payments pursuant to the Note for the months from March, 2008 through July, 2010, excepting the month of September, 2008 for which an extension was granted. The Bank last received payment from Mr. Kelleher on the Note on July 19, 2010. Mr. Kelleher is in default for the payments due on the first days of the months from September, 2010 through February, 2011. The current outstanding principal and accrued interest total $556,658.70 as of February 18, 2011, and that total continues to increase at a *per diem* rate of $111.3145."

"The Bank desires to foreclose on and sell the Vessel in satisfaction of the past due amounts. The Vessel is presently located, to the best of my knowledge, at Gulf Coast Composites, 2301 Anders Ln., Kemah, TX 77565"

Further affiant sayeth not.

_____
LEE PRINCE

SUBSCRIBED AND SWORN TO BEFORE ME on this the _22_ day of _February_, 2011, to certify which witness my hand and seal of office.

[SEAL]

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

KIMBERLY BLACKBURN
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
12-10-2014

F:\WPDOCS\2569035\Pleadings\mdp complaint rev 02 21.wpd

VERIFIED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

## PROMISSORY NOTE

$585,000.00                                                    _Februay 1_, 2008

FOR VALUE RECEIVED, and WITHOUT GRACE, on demand at any time as to all or any portion of the indebtedness evidenced by this Note or, if demand is not sooner made, in installments as hereinafter provided, the last of which shall be due and payable on or before five (5) year(s) from date hereof, WILLIAM C. KELLEHER ("Maker", whether one or more and if more than one then jointly and severally) promise(s) to pay to the order of TEXAS COMMUNITY BANK, N.A. (together with its successors and assigns and any subsequent holders of this Note, the "Lender") at its offices at 16610 Interstate 45, The Woodlands, Texas 77384, or such other place as Lender may from time to time designate by written notice to Maker, the sum of FIVE HUNDRED EIGHTY-FIVE THOUSAND AND NO/100 DOLLARS ($585,000.00), in immediately available current funds and lawful money of the United States of America, which, at the time of payment, shall be legal tender for the payment of public and private debts, together with interest on the outstanding principal balance of this Note from the date of advance until maturity at a rate equal to SEVEN AND ONE-HALF PERCENT (7.50%) per annum.

All past due principal and interest, whether due as a result of acceleration or otherwise, shall bear interest at the highest lawful rate permissible under the laws applicable to this Note ("Maximum Legal Rate") from the date the payment thereof shall have become due until the same shall have been repaid in full. If the Maximum Legal Rate hereon is established under the laws of the State of Texas, the applicable rate ceiling shall be the indicated (weekly) rate ceiling, from time to time in effect and applicable to this Note, as provided in Chapter 303 of the Texas Finance Code. However, if applicable law establishes no Maximum Legal Rate then all past due principal and interest shall bear interest at a rate equal to EIGHTEEN PERCENT (18%) per annum. In addition, Lender may charge and collect a late fee of five percent (5%) of any scheduled installment that is more than ten (10) days past due. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note.

In no event is the rate of interest on the outstanding principal balance hereof ever to exceed the Maximum Legal Rate and Lender, Maker and any co-maker, drawer, accepter, endorser, guarantor, surety, accommodating party or other person or entity now or hereafter primarily liable or secondarily liable for payment of all or any part of this Note (each a "other liable party" or collectively "other liable parties"), intend to conform and contract in strict compliance with applicable usury law. Determination of the rate of interest for the purposes of determining whether this Note is usurious shall be made by amortizing, prorating, allocating and spreading during the time this Note is outstanding all interest or other sums deemed to be interest at any time contracted for, charged or received from the Maker. It is intended that all interest due and payable under this Note shall not exceed the Maximum Legal Rate and, notwithstanding anything to the contrary contained in this Note or any agreement entered into in connection with or as security herefor, it is agreed as follows: the aggregate of all consideration which constitutes interest under applicable law which is taken, reserved, contracted for, charged or received under this Note or under any agreement executed in connection with or as security

EXHIBIT

A

herefor, shall under no circumstances exceed the Maximum Legal Rate and any excess shall be deemed a mistake and credited on this Note by the then holder thereof (or if this Note shall have been paid in full, refunded to the Maker). Neither the Maker, nor any other liable party shall ever be liable for interest in excess of the Maximum Legal Rate and the provisions of this paragraph shall control over all other provisions of this Note and all other documents to or of which Lender is a party or a beneficiary now or hereafter evidencing, securing, guaranteeing, modifying or otherwise relating to the indebtedness evidenced hereby, and all extensions, renewals and modifications thereof (the Note and the documents each a "Loan Document" or collectively the "Loan Documents") which may be in apparent conflict with the provisions of this paragraph.

Notwithstanding any term or provision of this Note to the contrary, Maker confirms to Lender that neither Maker nor its legal counsel, if any, is aware that this Note, or the transaction in connection which this Note was issued, is or maybe usurious in any respect. To induce Lender to make the loan evidenced by this Note, Maker agrees with and covenants to Lender that if at anytime Maker believes or discovers that any term or provision of this Note or any action taken by Lender in connection with Note is or may be in violation of the usury laws or any other applicable law, Maker will immediately give notice to Lender specifying with particularity the nature and extent of any such potential violation of the usury laws or any other applicable law, and afford to Lender a reasonable period (which in no event will be less than sixty (60) days) within which to cure same. Maker agrees with and covenants to Lender that in no instance will Maker make any claim, bring any suit, prosecute or otherwise assert any cause of action, claim, counterclaim, or defense in respect of any violation of the usury laws or any other applicable law, unless, as a condition precedent thereto, Maker has given to Lender such notice and afforded to Lender such opportunity to cure as provided herein.

Interest hereon shall be computed on the basis of a year consisting of THREE HUNDRED SIXTY (360) days unless either (a) the holder of this Note elects or (b) compliance with applicable law requires that interest for any period of time be computed on the basis of the actual number of days in the applicable calendar year in which accrued, in either of which events interest for that period of time shall be so computed.

Without limitation on the right of the Lender to demand at any time payment of all or any portion of the indebtedness evidenced by this Note, the principal of this Note and the interest to accrue hereon is and shall be due and payable in 60 consecutive monthly installments as follows:

1.  The first 59 of such installments shall be in the amount of FIVE THOUSAND FOUR HUNDRED TWENTY-THREE AND 02/100 DOLLARS ($5,423.02) each, which amount includes the interest which has accrued to the date of such installment, with the first such installment becoming due and payable _MARCH 1_, 2008, with a like installment becoming due and payable on the same day of each succeeding month thereafter;

2.  The 60th and final installment shall be due and payable on or before five (5) year(s) from date hereof and shall be in the amount of the then unpaid principal balance of this Note, together with all of the then unpaid accrued interest hereon.

2

Whenever any payment to be made under this Note is stated to be due on a Saturday, Sunday or legal holiday for commercial banks under applicable law, then such payment is due and may be made on the next succeeding business day, and such extension of time will be included in the computation of interest under this Note.

All or any part of the principal hereof may be prepaid at any time without the payment of any penalty or premium; however, at Lender's option, all voluntary prepayments shall be applied to future installments due hereon in the inverse order of their maturity.

All payments hereunder, whether designated as payments of principal or interest, shall be applied first to accrued and unpaid interest, then to the discharge of any expenses which the holder may be entitled to reimbursement for by reason hereof or under the terms of any Loan Document, and lastly, to unpaid principal.

As additional security for this Note, the Maker hereby grants to Lender an express lien and security interest in and to all property and any and all deposits (general or special, time or demand, provisional or final) at any time held by the Lender for the credit or for the account of Maker. Without impairing or limiting the continued existence and viability of Lender's express security interests in such property and deposits, in the event this Note is not paid at maturity, however such maturity may be brought about, or if a default should occur and be continuing under any Loan Document, Lender is hereby authorized at any time, and from time to time, without notice to Maker (any such notice being hereby expressly waived by Maker), to set off and apply any and all such deposits at any time held or other indebtedness at any time owing by Lender to or for the credit or the account of Maker against the outstanding principal balance of, and the accrued interest on, this Note. The foregoing rights of Lender are in addition to and cumulative of all other rights and remedies (including, without limitation, other liens, security interests and rights of setoff) which Lender may have.

It is agreed that time is of the essence of this Note and that in the event of a failure to pay any installment of principal and/or interest herein provided when due, or a breach of the provisions of any of the Loan Documents, or in the event of a failure to pay any obligation, or loan of whatever nature owed by Maker to Lender, whether such obligation is in existence now or in the future, upon Maker's death, dissolution, termination of existence, insolvency or business failure, the appointment of a receiver of all or any part of the Maker's property, an assignment for the benefit of creditors of Maker, a calling of a meeting of creditors of Maker, the commencement of any proceeding under any bankruptcy, insolvency or debtor relief laws by or against Maker or any other liable party, or if Maker or any other liable party fails to furnish financial or other information requested by Lender, or if Maker or any other liable party furnishes or has furnished any financial or other information or statements that are misleading in any material respect, or a writ or order of attachment or garnishment is issued or made against any of the property of Maker or if Lender in good faith believes that the prospect of payment of this Note is impaired, the Lender, at its option, may declare the entire unpaid principal balance and all unpaid accrued interest owing hereon at once due and payable, without notice. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

3

The remedies of Lender in this Note and in the Loan Documents, or at law or in equity, shall be cumulative and concurrent, and may be pursued singly, successively or together in Lender's sole discretion and as often as the occasion therefore shall arise. Neither the failure to exercise, nor delay in exercising, Lender's right to accelerate the maturity of this Note or any other right, power or remedy upon any default may be construed as a waiver of such default or as a waiver of the right to exercise any such right, power or remedy at anytime. No single or partial exercise by Lender of any right, power or remedy exhausts the same or precludes any other or further exercise thereof, and every such right, power or remedy may be exercised at anytime and from time to time.

Remittances and payment of any part of this Note other than in the required amount in immediately available funds at the place where this Note is payable shall not, regardless of any receipt or credit issued therefore, constitute payment until the required amount is actually received by Lender in full and in accordance herewith and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the full amount then due shall be deemed an acceptance on account only and the failure to pay the entire amount then due shall be and continued to be an event of default in the payment of this Note.

If default occurs in the payment of this Note at maturity, whether the maturity may occur by acceleration or otherwise, or if this Note is collected through probate, bankruptcy or other proceedings, Maker promises to pay all costs and expenses of collection and enforcement. If this Note is placed in the hands of an attorney for collection, Maker promises to pay, in addition to all other costs and expenses of collection and enforcement, an additional amount equal to fifteen percent (15%) of the principal and interest then due, as attorney's fees.

Lender may require payment by Maker and any other liable party without first resorting to any security. Maker and all other liable parties on this Note consent to the release or discharge of any other liable party on this Note and to the release, impairment or substitution of any collateral for this Note by Lender. **MAKER AND EVERY OTHER LIABLE PARTY WAIVE PRESENTMENT FOR PAYMENT, PROTEST, NOTICE OF DISHONOR, GRACE, NOTICE OF INTENT TO ACCELERATE AND NOTICE OF ACCELERATION AND ANY OTHER NOTICE, FILING OF SUIT AND DILIGENCE IN COLLECTION OF THIS NOTE AND THE ENFORCEMENT OF ANY OF THE SECURITY RIGHTS OF LENDER, AND CONSENT AND AGREE THAT TIME OF PAYMENT OF THIS NOTE MAY BE EXTENDED WITHOUT NOTICE AT ANY TIME AND FROM TIME TO TIME, AND FOR PERIODS OF TIME WHETHER OR NOT FOR A TERM OR TERMS IN EXCESS OF THE ORIGINAL TERM OF THIS NOTE WITHOUT NOTICE OR CONSIDERATION TO, OR CONSENT FROM, ANY OF THEM.**

Without being limited thereto or thereby, this Note is secured by that certain Preferred Mortgage covering and describing a 2006 NEFTEGAZ vessel.

4

Maker and each other liable party acknowledges and agrees that Lender may, at anytime, and from time to time, without the consent of or notice to Maker or any other liable party assign, sell, transfer or grant participations in all or part of the obligations of Maker evidenced by this Note, together with any liens or collateral securing the payment of this Note. Lender may disseminate to any assignee, purchaser, transferee or participant or prospective assignee, purchaser, transferee or participant any information that Lender has pertaining to the loan evidenced by this Note, including without limitation, any information regarding Maker, any other liable party, or any property owned or held by Maker or other liable party or offered as security for or securing the loan evidenced by this Note. If Maker elects to assign, sell, transfer, or participate any Overline Portion, as hereafter defined, of the obligations evidenced by this Note and if either: (i) Lender is unable (having no obligation) to procure an assignee, purchaser, transferee or participant, upon terms and conditions that are acceptable to Lender in its sole, exclusive and absolute discretion, or (ii) an assignee, purchaser, transferee or participant fails or refuses to advance to Maker any Overline Portion through no fault of Lender, then Lender has no obligation and/or liability to Maker or any other liable party for failure to fund such Overline Portion, nor does Lender have any obligation to procure funds from other sources. In no event is Lender obligated to fund any amount under this Note that would cause Lender to be in violation of any state or federal law with respect to Maker or any other liable party or any of their related interests being liable to Lender in an amount in excess of that permitted by such applicable law, including applicable law on the amount that Lender may legally loan to one borrower and its related interests. "Overline Portion" means the amount of loan proceeds in excess of the amount that Lender is permitted by applicable law to loan to Maker and its related interests.

Whenever pursuant to this Note or any Loan Document Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall be (except as is otherwise specifically and expressly provided herein to the contrary) in the sole and absolute discretion of Lender and shall be final and conclusive.

If any provision of this Note or the application thereof, to any person or circumstances shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of this Note nor the application of such provision to other persons or circumstances nor the other instruments referred to herein shall be affected thereby, but rather shall be enforced to the greatest extent permitted by applicable law.

Neither this Note nor any of the Loan Documents may be changed, waived, supplemented, discharged or terminated orally or by any act or failure to act on the part of Maker or Lender, but only by an agreement in writing signed by the party against whom enforcement thereof is sought and then only to the extent expressly set forth in such writing. No person other than a duly authorized officer or agent of Lender shall be deemed an agent of Lender nor have any authority to waive, modify, supplement or terminate in any manner whatsoever any terms of this Note.

5

Neither this Note nor any Loan Document nor any uncertainty or ambiguity herein or therein shall be construed or resolved against Lender by virtue of the fact that such document has originated with Lender as drafter. Maker acknowledges that it has reviewed this Note and has had the opportunity to consult with counsel on same. This Note, therefore, shall be construed and interpreted according to the ordinary meanings of the words used so as to fairly accomplish the purposes and intentions of the parties hereto. Reference to days for performance shall mean calendar days unless business days are expressly indicated.

From time to time, at the request of Lender, Maker will: (i) promptly correct any defect, error or omission which may be discovered in the contents of this Note or in any Loan Document or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver, record and/or file (or cause to be executed, acknowledged, delivered, recorded and/or filed), such further documents and instruments, including, without limitation, further deeds of trust, security agreements, financing statements, continuation statements, and assignment of rents, and perform such further acts and provide such further assurances as may be necessary, desirable, or proper, in Lender's opinion: (a) to carry out more effectively the purposes of this Note and the Loan Documents and the transactions contemplated hereunder and thereunder, (b) to confirm the rights created under this Note and the Loan Documents, (c) to protect and further the validity, priority and enforceability of this Note and the Loan Documents and the liens and security interests created thereby, and (d) to subject to the Loan Documents any property of Maker intended by the terms of any or one or more of the Loan Documents to be encumbered by the Loan Documents; and (iii) pay all costs in connection with any of the foregoing.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (WITHOUT REGARD TO CONFLICTS OF LAWS) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. Maker for itself and its successors and assigns hereby irrevocably: (i) submits to the non-exclusive jurisdiction of the state and federal courts in Texas; (ii) waives, to the fullest extent permitted by law, any objection which it may now or in the future have in the laying of venue of any litigation arising out of or in connection with this Note or any Loan Documents brought in the District Court of MONTGOMERY County, Texas or in the United States District Court for the Southern District of Texas, Houston division; (iii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum; and (iv) agrees that any legal proceeding against any party to any of the Loan Documents arising out of or in connection with any of the Loan Documents may be brought in the foregoing courts. The scope of each of the foregoing waivers is intended to be all encompassing of any and all disputes that may be filed in any court and that relate this subject matter of this transaction, including, without limitation, contract claims, tort claims, breach of duty claims, and other common law and statutory claims. Maker acknowledges that these waivers are a material inducement to Lender's agreement to enter into the agreements and obligations evidenced by this Note and the Loan Documents, and that Lender has already relied on these waivers and will continue to rely on each of these waivers and related future dealings. These waivers are irrevocable, meaning that they may not be modified either orally or in writing, and these waivers apply to any future renewals, extensions, amendments, modifications, increases, or replacements in respect of any and all of the Note or the Loan Documents.

6

THIS NOTE AND THE LOAN DOCUMENTS CONSTITUTE THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND ALL PRIOR AGREEMENTS, WHETHER WRITTEN OR ORAL, RELATIVE HERETO AND THERETO WHICH ARE NOT CONTAINED HEREIN OR THEREIN ARE SUPERSEDED AND TERMINATED HEREBY AND THIS NOTE AND THE LOAN DOCUMENTS MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES HERETO.

Whenever necessary, as used in this Note, the singular number shall include the plural, the masculine shall include the feminine and the neuter, and the word "Maker" and "Lender" shall be deemed to include the maker and holder of this Note and their respective heirs, successors and assigns. It is expressly understood and agreed that Lender shall never be construed for any purposes as a partner, joint venturer, co-principal, or associate of Maker or any other person or party claiming by, through or under the Maker.

In Witness Whereof, Maker, intending to be legally bound hereby, has duly executed, and unconditionally delivered, this Note as of the date and year first above written.

_____
WILLIAM C. KELLEHER

013108.030

7040645 50/7040645



## TEXAS COMMUNITY BANK, N.A.
**3951 San Felipe**
**Houston, TX 77027**
**Phone (713) 232-4800 Fax (713) 232-4801**

### Modification Agreement
September 22, 2008

**Recitals:**

Whereby, William C. Kelleher (the Borrower) has executed that certain promissory note (Loan #7040645), dated February 1, 2008 in the amount of $585,000.00 with a maturity date of February 1, 2013.

**Modifications:**

The Lender hereby agrees to bump the September 1, 2008 payment which will extend the maturity of the above note to March 1, 2013.

**Agreed and accepted to:**

*per verbal agreement - No Power due to Hurricane Ike*

William C. Kelleher

Terry A. Pruden, Lender
Vice Chairman of the Board

9.23.08
EIS

PREFERRED
MORTGAGE

| | | |
|---|---|---|
| **VESSEL NAME:** | **NEFTEGAZ** | **OFFICIAL NO:** |
| **AMOUNT:** | $585,000.00 plus interest and performance of mortgage covenants | |
| **NAME OF OWNER(S) ADDRESS:** | WILLIAM C. KELLEHER – 100% 18 MARINERS LANE, KEMAH, TX  77565 | **HULL NO:** PCX14018D606 |
| **MORTGAGEE: ADDRESS:** | TEXAS COMMUNITY BANK, NA – 100% 16610 I-45, THE WOODLANDS, TX 77384 | **DATE:** 02/01/2008 |

WHEREAS, the Owners, Mortgagors, **WILLIAM C. KELLEHER**, herein, are the sole owners of the whole above described and named vessel, and are justly indebted to the Mortgagee, **TEXAS COMMUNITY BANK, NA**, as evidenced by promissory note (the "note") dated FEBRUARY 1, 2008 in the principal amount of **$585,000.00**, payable to the order of Mortgagee as detailed in the "note".

AND WHEREAS, Owner has agreed to give this Mortgage as security for the note, and has authorized and directed the execution and delivery hereof (together with any and all renewals, extensions, modifications and replacements thereof and substitutions therefor).

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel named and identified above, together with all masts, spars, capstans, pumping equipment, spare parts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act of 1920, as amended and codified.

Owner agrees to pay said indebtedness with interest thereon as in the Note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

### ARTICLE I. - Particular Covenants of Owner

Owner covenants as follows:

1.  Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the Note has been duly taken. Owner has full power and authority to own and mortgage the vessel; all action necessary and required by law for the execution and delivery of this Mortgage, the Note and any other documents executed in connection herewith, has been duly and effectively taken; and the indebtedness hereby secured is and will be the valid and enforceable obligation of the Owner in accordance with its terms.

2.  Owner lawfully owns and possesses the vessel free from all liens, claims, and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3   Owner shall at its own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All policies of insurance carried in accordance herewith and covering loss of or damage to the vessel or protection and indemnity or similar risks shall be subject to Mortgagee's approval and shall provide that losses thereunder shall be payable solely to Mortgagee for distribution by Mortgagee to Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to the Mortgagee's approval. All policies of insurance carried in accordance herewith shall be delivered to Mortgagee with evidence satisfactory to Mortgagee that all premiums and other charges therefor have been fully paid. Owner shall notify, and shall request its insurance brokerage firm to agree to notify, Mortgagee promptly of any cancellation of or material change in any insurance coverage. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4.  Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, not carry any cargo that will expose the vessel to penalty, forfeiture or capture, or suffer or permit to be done anything that would injuriously affect the registration or the vessel, or remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when mortgaged with reasonable wear and tear excepted.



EXHIBIT
B

5.   Neither the Owner, Agent, Master nor any Charterer of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage. This provision and paragraphs 6 and 9 of this Article I shall be included in any charter party with respect to the vessel.

6.   Owner and any Charterer shall place and prominently display in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel the notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7.   Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel.  At its own cost and expense, Owner shall maintain and preserve the vessel in as good condition, working order, and repair as at the date of the execution of this Mortgage, ordinary wear and tear and depreciation excepted.

8.   If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9.   Owner and any Charterer shall at all times afford Mortgagee, or its authorized representative, complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's or Charterer's related accounts and records.  Mortgagee or its authorized representative, shall also have the right, after reasonable notice, to survey the vessel to ascertain her condition and to assure that the vessel is being properly repaired and maintained.  Owner shall certify quarterly and, if Mortgagee requests, monthly, that all wages, repair and storage bills, and other claims whatsoever which might have given rise to a lien upon the vessel have been paid in full.

10.   Owner shall not sell, mortgage, transfer or change the flag of the vessel without the written consent of Mortgagee first obtained; provided, however, that any such written consent to any sale, mortgage, transfer or change of flag shall not be deemed or held to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, transfer or change of flag; and provided, further, that any sale, mortgage or transfer of the vessel shall be subject to the terms, covenants and conditions of this Mortgage and the lien created hereby.

11.   From time to time, Owner shall execute and deliver such other and further instruments, documents or assurances as in the opinion of Mortgagee may be required to subject more effectively the vessel to the payment of the indebtedness evidenced by the Note and to the performance of the terms and provisions of this Mortgage and/or to effectuate any sale of the vessel provided for herein.

## ARTICLE II. - Default

1.   In any one or more of the following events, herein termed "events of default," viz:

(a)   Default in the punctual payment of the principal of the Note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Article I hereof, or attempt to violate any provision of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b)   Commission of an act of bankruptcy by Owner or filing of or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof; or

(c)   Any representation or warranty made by or on behalf of Owner herein or in any writing furnished to Mortgagee in order to induce Mortgagee to make the loan to Owner secured hereby proves to have been inaccurate in any material respect when made; or

(d)   Owner makes an assignment for the benefit of creditors or becomes insolvent or fails to pay its debts generally as they become due;

then, and in every such case, Mortgagee may, without limitation or election of remedies:

(i)   Declare the principal of the Note and all accrued interest thereon to be and they shall then become and be due and payable forthwith; and/or

(ii)   Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(iii)   Retake the vessel without prior demand or legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser; and/or

(iv)   Exercise all rights of foreclosure, whether judicial or non-judicial, under the Ship Mortgage Act or the Uniform Commercial Code of the state where the vessel is then located or other applicable law.

2.   Any sale made either under the power of sale hereby given or under judgment or decree in any judicial proceeding, for foreclosure or otherwise for the enforcement of this Mortgage, shall operate to divest all right, title, interest, claim, and demand whatsoever, either at law or in equity or in admiralty, of Owner of, in, and to the vessel, and shall be a perpetual bar at law, in equity, and in admiralty against Owner and Owner's successors and assigns, and against any and all persons claiming or who may claim the vessel or any part thereof from, through or under Owner or Owner's successors or assigns.

3.   In the event of the sale of the vessel pursuant to any of the remedies vested in Mortgagee hereunder or pursuant to any judicial proceedings instituted by or on behalf of Mortgagee or its assigns, Owner or the successors and assigns of Owner, as the case may be, whenever requested by Mortgagee, shall make, execute, and deliver to any purchaser or purchasers at such sale (including Mortgagee or its assigns) any and all bills of sale or such other instruments of transfer, conveyance or quit-claim as Mortgagee may require, and in the event of default by Owner in the execution and delivery of such instrument or instruments upon request, Mortgagee or its successors or assigns, as the case may be, are hereby irrevocably constituted and appointed attorney-in-fact and/or authorized agent of Owner for the purpose of the execution and delivery of such bill of sale or other instrument of conveyance, transfer or quit-claim, or oath of ownership; and the acts of the Mortgagee, or its successors or assigns, as the case may be, as the attorney-in-fact and/or authorized agent of Owner for the purposes herein specified, are hereby ratified and confirmed.

(2)

4.  In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or take possession thereof, and to defend any action and/or discharge any lien.

5.  Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee.  No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.  In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

6.  The net proceeds of any judicial or other sale, and any lease, charter, management, operation of or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:  To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the Note secured hereby, with interest on all such amounts at the rate as stated in the Note; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed, all of which shall be deemed secured by the lien of this mortgage.

SECOND:  To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner.  Owner shall be entitled to any surplus, subject to setoff in favor of Mortgagee for any other indebtedness of Owner to Mortgagee.

7.  All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to the Note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at a rate equal to the rate as stated in the Note; and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof.  Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

### ARTICLE III.-Possession Until Default

Until one or more of the events of default hereinabove described, Owner shall be permitted to retain actual possession and use of the vessel.

### ARTICLE IV.-Sundry Provisions

1.  All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns.  Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee.  If more than one person is the Owner herein, "his" shall mean "their".

2.  This Mortgage may be simultaneously executed in any number of counterparts and all such counterparts executed and delivered shall each be deemed an original and shall together constitute but one and the same instrument.

3.  If any provision of this Mortgage shall at any time for any reason be declared unenforceable, invalid, void or otherwise inoperative by a court of competent jurisdiction, such declaration or decision shall not affect the validity of any other provision or provisions of this Mortgage, or the validity of this Mortgage as a whole. Nothing herein shall be deemed a waiver of the preferred status of this mortgage.

4.  Except as otherwise specifically herein provided, all notices required to be given under the terms and provisions of this Mortgage shall be deemed to have been duly given or served upon deposit in the United States mail, registered or certified mail, postage prepaid, at the respective addresses first set forth above, or at such other address or addresses as the party changing its address may from time to time designate by written notice given to the other party in the manner provided herein.

5.  If more than one person is the Owner and is signing this mortgage as mortgagor, each such person is responsible to pay the entire amount due and owing and to do everything required of the Owner under this mortgage.  Any suit to enforce this mortgage may be brought against any one such person without joining the other or others.

6.  THIS WRITTEN LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN OWNER AND MORTGAGEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name.

OWNER(S)

BY: _____

**WILLIAM C. KELLEHER**

**ACKNOWLEDGMENT**

STATE OF _____Texas_____ §

COUNTY OF _____Harris_____ §

Dated on ___February 1, 2008___, the person(s) named above acknowledged before me execution of the foregoing instrument in their stated capacity(ies) and delivered the same as their free act and deed for the purpose(s) therein set forth.

_____
NOTARY PUBLIC

SEAL

BONNIE SELZER PURVIS
Notary Public, State of Texas
My Commission Expires
September 14, 2011

(3)

PREFERRED
MORTGAGE

| | | |
|---|---|---|
| **VESSEL NAME:** | **NEFTEGAZ** | **OFFICIAL NO:** |
| **AMOUNT:** | **$585,000.00 plus interest and performance of mortgage covenants** | |
| **NAME OF OWNER(S):** **ADDRESS:** | **WILLIAM C. KELLEHER – 100%** **18 MARINERS LANE, KEMAH, TX  77565** | **HULL NO: PCX14018D606** |
| **MORTGAGEE:** **ADDRESS:** | **TEXAS COMMUNITY BANK, NA – 100%** **16610 I-45, THE WOODLANDS, TX 77384** | **DATE:** 02/01/2008 |

WHEREAS, the Owners, Mortgagors, **WILLIAM C. KELLEHER**, herein, are the sole owners of the whole above described and named vessel, and are justly indebted to the Mortgagee, **TEXAS COMMUNITY BANK, NA,** as evidenced by promissory note (the "note") dated February 1, 2008 in the principal amount of **$585,000.00**, payable to the order of Mortgagee as detailed in the "note".

AND WHEREAS, Owner has agreed to give this Mortgage as security for the note, and has authorized and directed the execution and delivery hereof (together with any and all renewals, extensions, modifications and replacements thereof and substitutions therefor).

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel named and identified above,together with all masts, spars, capstans, pumping equipment, spare parts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act of 1920, as amended and codified.

Owner agrees to pay said indebtedness with interest thereon as in the Note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

### ARTICLE I. - Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect, and all action necessary for the execution, delivery and validity hereof and of the Note has been duly taken. Owner has full power and authority to own and mortgage the vessel; all action necessary and required by law for the execution and delivery of this Mortgage, the Note and any other documents executed in connection herewith, has been duly and effectively taken; and the indebtedness hereby secured is and will be the valid and enforceable obligation of the Owner in accordance with its terms.

2. Owner lawfully owns and possesses the vessel free from all liens, claims, and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at its own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee.  All policies of insurance carried in accordance herewith and covering loss of or damage to the vessel or protection and indemnity or similar risks shall be payable solely to Mortgagee's approval and shall provide that losses thereunder shall be payable solely to Mortgagee for distribution by Mortgagee to Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to the Mortgagee's approval.  All policies of insurance carried in accordance herewith shall be delivered to Mortgagee with evidence satisfactory to Mortgagee that all premiums and other charges therefor have been fully paid.  Owner shall notify, and shall request its insurance brokerage firm to agree to notify, Mortgagee promptly of any cancellation of or material change in any insurance coverage.  Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, not carry any cargo that will expose the vessel to penalty, forfeiture or capture, or suffer or permit to be done anything that would injuriously affect the registration or the vessel, or remove the vessel from the limits of the territorial waters of the United States without first obtaining written permission of Mortgagee. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel and condition of vessel is to be maintained in same condition as when mortgaged with reasonable wear and tear excepted.

(1)

5.   Neither the Owner, Agent, Master nor any Charterer of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage. This provision and paragraphs 8 and 9 of this Article I shall be included in any charter party with respect to the vessel.

6.   Owner and any Charterer shall place and prominently display in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel the notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7.   Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. At its own cost and expense, Owner shall maintain and preserve the vessel in as good condition, working order, and repair as at the date of the execution of this Mortgage, ordinary wear and tear and depreciation excepted.

8.   If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9.   Owner and any Charterer shall at all times afford Mortgagee, or its authorized representative, complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's or Charterer's related accounts and records. Mortgagee or its authorized representative, shall also have the right, after reasonable notice, to survey the vessel to ascertain her condition and to assure that the vessel is being properly repaired and maintained. Owner shall certify quarterly and, if Mortgagee requests, monthly, that all wages, repair and storage bills, and other claims whatsoever which might have given rise to a lien upon the vessel have been paid in full.

10.   Owner shall not sell, mortgage, transfer or change the flag of the vessel without the written consent of Mortgagee first obtained; provided, however, that any such written consent to any sale, mortgage, transfer or change of flag shall not be deemed or held to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, transfer or change of flag; and provided, further, that any sale, mortgage or transfer of the vessel shall be subject to the terms, covenants and conditions of this Mortgage and the lien created hereby.

11.   From time to time, Owner shall execute and deliver such other and further instruments, documents or assurances as in the opinion of Mortgagee may be required to subject more effectively the vessel to the payment of the indebtedness evidenced by the Note and to the performance of the terms and provisions of this Mortgage and/or to effectuate any sale of the vessel provided for herein.

## ARTICLE II. - Default

1.   In any one or more of the following events, herein termed "events of default," viz:

   (a)  Default in the punctual payment of the principal of the Note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Article I hereof, or attempt to violate any provision of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

   (b)  Commission of an act of bankruptcy by Owner or filing of or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof; or

   (c)  Any representation or warranty made by or on behalf of Owner herein or in any writing furnished to Mortgagee in order to induce Mortgagee to make the loan to Owner secured hereby proves to have been inaccurate in any material respect when made; or

   (d)  Owner makes an assignment for the benefit of creditors or becomes insolvent or fails to pay its debts generally as they become due;

then, and in every such case, Mortgagee may, without limitation or election of remedies:

   (i)  Declare the principal of the Note and all accrued interest thereon to be and they shall then become and be due and payable forthwith; and/or

   (ii)  Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

   (iii)  Retake the vessel without prior demand or legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser; and/or

   (iv)  Exercise all rights of foreclosure, whether judicial or non-judicial, under the Ship Mortgage Act or the Uniform Commercial Code of the state where the vessel is then located or other applicable law.

2.   Any sale made either under the power of sale hereby given or under judgment or decree in any judicial proceeding, for foreclosure or otherwise for the enforcement of this Mortgage, shall operate to divest all right, title, interest, claim, and demand whatsoever, either at law or in equity or in admiralty, of Owner of, in, and to the vessel, and shall be a perpetual bar at law, in equity, and in admiralty against Owner and Owner's successors and assigns, and against any and all persons claiming or who may claim the vessel or any part thereof from, through or under Owner or Owner's successors or assigns.

3.   In the event of the sale of the vessel pursuant to any of the remedies vested in Mortgagee hereunder or pursuant to any judicial proceedings instituted by or on behalf of Mortgagee or its assigns, Owner or the successors and assigns of Owner, as the case may be, whenever requested by Mortgagee, shall make, execute, and deliver to any purchaser or purchasers at such sale (including Mortgagee or its assigns) any and all bills of sale or such other instruments of transfer, conveyance or quit-claim as Mortgagee may require, and in the event of default by Owner in the execution and delivery of such instrument or instruments upon request, Mortgagee or its successors or assigns, as the case may be, are hereby irrevocably constituted and appointed attorney-in-fact and/or authorized agent of Owner for the purpose of the execution and delivery of such bill of sale or other instrument of conveyance, transfer or quit-claim, or oath of ownership; and the acts of the Mortgagee, or its successors or assigns, as the case may be, as the attorney-in-fact and/or authorized agent of Owner for the purposes herein specified, are hereby ratified and confirmed.

4. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or take possession thereof, and to defend any action and/or discharge any lien.

5. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

6. The net proceeds of any judicial or other sale, and any lease, charter, management, operation of or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the Note secured hereby, with interest on all such amounts at the rate as stated in the Note; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed, all of which shall be deemed secured by the lien of this mortgage.

SECOND: To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to setoff in favor of Mortgagee for any other indebtedness of Owner to Mortgagee.

7. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to the Note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at a rate equal to the rate as stated in the Note; and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

## ARTICLE III.-Possession Until Default

Until one or more of the events of default hereinabove described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV.-Sundry Provisions

1. All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

2. This Mortgage may be simultaneously executed in any number of counterparts and all such counterparts executed and delivered shall each be deemed an original and shall together constitute but one and the same instrument.

3. If any provision of this Mortgage shall at any time for any reason be declared unenforceable, invalid, void or otherwise inoperative by a court of competent jurisdiction, such declaration or decision shall not affect the validity of any other provision or provisions of this Mortgage, or the validity of this Mortgage as a whole. Nothing herein shall be deemed a waiver of the preferred status of this mortgage.

4. Except as otherwise specifically herein provided, all notices required to be given under the terms and provisions of this Mortgage shall be deemed to have been duly given or served upon deposit in the United States mail, registered or certified mail, postage prepaid, at the respective addresses first set forth above, or at such other address or addresses as the party changing its address may from time to time designate by written notice given to the other party in the manner provided herein.

5. If more than one person is the Owner and is signing this mortgage as mortgagor, each such person is responsible to pay the entire amount due and owing and to do everything required of the Owner under this mortgage. Any suit to enforce this mortgage may be brought against any one such person without joining the other or others.

6. THIS WRITTEN LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN OWNER AND MORTGAGEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name.

OWNER(S)

BY: 

**WILLIAM C. KELLEHER**

**ACKNOWLEDGMENT**

STATE OF _Texas_ §

COUNTY OF _Harris_ §

Dated on _February 1 2008_ the person(s) named above acknowledged before me execution of the foregoing instrument in their stated capacity(ies) and delivered the same as their free act and deed for the purpose(s) therein set forth.

NOTARY PUBLIC

SEAL

BONNIE SELZER PURVIS
Notary Public, State of Texas
My Commission Expires
September 14, 2011

(3)

**BILL OF SALE**

| 1. VESSEL NAME | 2. OFFICIAL NUMBER OR HULL ID NUMBER |
|---|---|
| | **PCX14018D606** |

**3. NAME(S) AND ADDRESS(ES) OF SELLERS:**

**SITTEL MARINE, INC. – 100%**
**1510 MISTYWOOD LANE**
**DENTON, TX 76209**

**3A. TOTAL INTEREST OWNED (IF LESS THAN 100%)_____ %**

**4. NAME(S) AND ADDRESS(ES) OF BUYER(S) AND INTEREST TRANSFERRED TO EACH:**

**WILLIAM C. KELLEHER – 100%**
**18 MARINERS LANE**
**KEMAH, TX 77565**

**4A. TOTAL INTEREST TRANSFERRED (100% UNLESS OTHERWISE SPECIFIED)_____ %**

**4B. MANNER OF OWNERSHIP. UNLESS OTHERWISE STATED HEREIN, THIS BILL OF SALE CREATES A TENANCY IN COMMON, WITH EACH TENANT OWNING AN EQUAL UNDIVIDED INTEREST. CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.**

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP    ☐ TENANCY BY THE ENTIRETIES    ☐ COMMUNITY PROPERTY

☐ OTHER (DESCRIBE)

**5. CONSIDERATION RECEIVED:**

(ONE DOLLAR AND OTHER VALUABLE CONSIDERATION UNLESS OTHERWISE STATED)

**6. I (WE) DO HEREBY SELL TO THE BUYER(S) NAMED ABOVE, THE RIGHT, TITLE AND INTEREST IDENTIFIED IN BLOCK 4 OF THIS BILL OF SALE, IN THE PROPORTION SPECIFIED HEREIN.**

SELLER warrants that he has good title to the vessel and that it is sold free and clear of all security interests, equities, liens, bills, mortgages, taxes, obligations, claims or encumbrances of any nature whatsoever and hereby agrees to indemnify and hold harmless BUYER and CAROL MATTHEWS VESSEL DOCUMENTATION, INC., their officers, agents, employees, successors and assigns, from and against all claims, losses, damages, causes of action, suits, and liability of every kind, including all expenses of litigation, court costs and attorney's fees, which BUYER or CAROL MATTHEWS VESSEL DOCUMENTATION, INC. may suffer, sustain or incur based on or arising out of the ownership of said vessel prior to the date hereof. Vessel is sold together with an equal interest in the masts, bowsprit, sails, boats, anchors, cables, tackle, furniture, and all other necessaries thereto appertaining and belonging, except as stated herein

| 7. SIGNATURE(S) OF SELLER(S) OR PERSON(S) SIGNING ON BEHALF OF SELLER(S). | 8. DATE SIGNED |
|---|---|
| ROBERT W SITTEL | 1-29-08 |

**9. NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G., OWNER, AGENT, TRUSTEE, EXECUTOR)**

**ROBERT W SITTEL, PRESIDENT OF SITTEL MARINE, INC. – 100% – OWNER(S)**

**10. ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)**

ON 1-29-08 THE PERSON(S) NAMED IN SECTION 9
    (DATE)

ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT    STATE: **TX**

IN THEIR STATED CAPACITY(IES) FOR THE PURPOSE THEREIN CONTAINED.    COUNTY: Denton

NOTARY PUBLIC: Stephanie K Wells

**SEAL**

STEPHANIE K. WELLS
MY COMMISSION EXPIRES
January 5, 2011

MY COMMISSION EXPIRES: 01-05-2011
    (DATE)

| DEPARTMENT OF TRANSPORTATION U.S. COAST GUARD CG-1258 (REV. 9-97) | APPLICATION FOR INITIAL ISSUE, EXCHANGE, OR REPLACEMENT OF CERTIFICATE OF DOCUMENTATION; REDOCUMENTATION | THIS SECTION FOR COAST GUARD USE ONLY |
|---|---|---|

**APPLICATION FOR INITIAL ISSUE, EXCHANGE, OR REPLACEMENT OF CERTIFICATE OF DOCUMENTATION; REDOCUMENTATION**

THIS SECTION FOR COAST GUARD USE ONLY

CASE NUMBER:

CHECK #:

NOTE: FILING THIS APPLICATION DOES NOT ENTITLE A VESSEL TO DOCUMENTATION OR TO ANY CHANGES SOUGHT ON A CERTIFICATE OF DOCUMENTATION. OFFICIAL NUMBERS DESIGNATED ON THE BASIS OF THIS APPLICATION ARE NOT TRANSFERABLE. ONLY A CURRENT CERTIFICATE OF DOCUMENTATION IS VALID FOR VESSEL OPERATION.

FEE: $

## I. COMPLETE FOR ALL APPLICATIONS

APPROVED:

**A. VESSEL NAME**

**NEFTEGAZ**

OLD NAME IF APPLICABLE:

**B. OFFICIAL NUMBER** (IF AWARDED) AND HULL IDENTIFICATION NUMBER IF ANY.

**PCX14018D606**

DATE:

**C. NAME OF MANAGING OWNER**

**WILLIAM C. KELLEHER**

TELEPHONE NUMBER (OPTIONAL):

SOCIAL SECURITY OR TAX ID NUMBER
**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**

**D. ADDRESS OF MANAGING OWNER**

PHYSICAL ADDRESS:
**18 MARINERS LANE
KEMAH, TX 77565**

MAILING ADDRESS: (IF APPLICABLE)

SHOW PHYSICAL ADDRESS IF DIFFERENT FROM MAILING ADDRESS

**E. NAMES AND SOCIAL SECURITY OR TAX ID NUMBERS OF ALL OTHER OWNERS**

ATTACH SHEET LISTING ADDITIONAL OWNERS IF NECESSARY

**F. HAILING PORT INCLUDING STATE** (TO BE MARKED ON VESSEL)

**HOUSTON, TX**

**G. CITIZENSHIP** (SEE INSTRUCTIONS REGARDING STATUS OF ALIENS LAWFULLY ADMITTED FOR PERMANENT RESIDENCE) **VESSEL OWNED:**

[X] BY ONE OR MORE INDIVIDUALS — I (WE) CERTIFY THAT ALL OWNERS OF THIS VESSEL ARE CITIZENS OF THE UNITED STATES.

[ ] BY JOINT VENTURE OR ASSOCIATION — I (WE) CERTIFY THAT ALL MEMBERS OF THIS (JOINT VENTURE) (ASSOCIATION) ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT THE VESSELS COVERED BY THIS APPLICATION WITH THE ENDORSEMENT(S) SOUGHT IN THEIR OWN RIGHT.

[ ] IN A TRUST ARRANGEMENT — I (WE) CERTIFY THAT ALL TRUSTEES AND ALL BENEFICIARIES WITH AN ENFORCEABLE INTEREST IN THIS TRUST ARRANGEMENT ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS WITH THE ENDORSEMENT(S) SOUGHT IN THEIR OWN RIGHT.

[ ] BY A PARTNERSHIP OR LIMITED LIABILITY COMPANY
    A. GENERAL PARTNERSHIP OR LIMITED LIABILITY COMPANY (LLC)

    B. LIMITED PARTNERSHIP

I (WE) CERTIFY THAT ALL PARTNERS IN THIS PARTNERSHIP (MEMBERS OF THIS LLC) ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT. AND THAT THE PARTNERSHIP (LLC) MEETS THE FOLLOWING EQUITY REQUIREMENTS: EQUITY OWNED BY U.S. CITIZENS [ ] AT LEAST 50% [ ] MORE THAN 50%, LESS THAN 75% [ ] 75% OR MORE
I (WE) CERTIFY THAT ALL GENERAL PARTNERS IN THIS PARTNERSHIP ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT AND THAT THE PARTNERSHIP MEETS THE FOLLOWING EQUITY REQUIREMENTS. EQUITY INTEREST OWNED BY CITIZENS OF THE U.S. ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT WITH THE ENDORSEMENT SOUGHT. [ ] AT LEAST 50% [ ] MORE THAN 50%, LESS THAN 75% [ ] 75% OR MORE

[ ] VESSEL OWNED: BY A CORPORATION

    A. STATE OF INCORPORATION _____

    B. CITIZENSHIP OF PRESIDENT (AND OTHER CHIEF EXECUTIVE OFFICER, IF ANY) _____

    C. CITIZENSHIP OF CHAIRMAN OF THE BOARD _____

D. NUMBER OF DIRECTORS NECESSARY TO CONSTITUTE A QUORUM _____0_____

E. NUMBER OF ALIEN DIRECTORS _____0_____

F. PERCENTAGE OF STOCK OWNED BY U.S. CITIZENS ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT, WITH THE ENDORSEMENT(S) SOUGHT ON THIS APPLICATION (APPLIES TO ALL TIERS OF OWNERSHIP) [ ] LESS THAN 50% [ ] AT LEAST 50% [ ] MORE THAN 50%, LESS THAN 75% [ ] 75% OR MORE

[ ] VESSEL OWNED BY A CORPORATION QUALIFIED AND APPLYING UNDER 46 CFR 68.01 (BOWATER)

CURRENT CERTIFICATE OF COMPLIANCE ATTACHED. I (WE) CERTIFY THAT THE CORPORATE STRUCTURE HAS NOT CHANGED SINCE ISSUANCE OF THAT CERTIFICATE, AND THAT THE VESSEL, IF SELF-PROPELLED, IS LESS THAN 500 GROSS TONS.

[ ] VESSEL OWNED OR OPERATED BY NOT-FOR-PROFIT OIL RECOVERY COOPERATIVE

COPY OF CURRENT LETTER OF QUALIFICATION ATTACHED. I (WE) CERTIFY THAT THE INFORMATION ON FILE WITH REGARD TO COOPERATIVE AND ISSUANCE OF THAT LETTER REMAINS UNCHANGED.

**H. ENDORSEMENTS FOR WHICH APPLICATION IS MADE.** (IF MORE THAN ONE, INDICATE ESTIMATED PERCENTAGE FOR EACH).

[X] RECREATIONAL    [ ] COASTWISE    [ ] FISHERY    [ ] COASTWISE (BOWATER ONLY)

[ ] REGISTRY    [ ] OIL SPILL RESPONSE

[ ] COASTWISE UNDER CHARTER TO AN ENTITY QUALIFIED TO ENGAGE IN COASTWISE 46 APP USC 802. COPY OF CHARTER ON FILE WITH U.S.C.G.

PREVIOUS EDITION OBSOLETE                      SN 7530-00-F01-0800

REVERSE OF CG-1258 (REV. 9-97)

**I.  PRIMARY SERVICE**

- ☐ COMMERCIAL FISHING BOAT
- ☐ FISHING PROCESSING VESSEL
- ☐ FREIGHT SHIP
- ☐ FREIGHT BARGE
- ☐ INDUSTRIAL VESSEL
- ☐ MOBILE OFFSHORE DRILLING UNIT
- ☐ OIL RECOVERY
- ☐ OFFSHORE SUPPLY VESSEL

- ☐ PASSENGER (6 OR FEWER)
- ☐ PASSENGER (MORE THAN 6)
- ☐ PASSENGER BARGE (6 OR FEWER)
- ☐ PASSENGER BARGE (MORE THAN 6)
- ☐ PUBLIC FREIGHT
- ☐ PUBLIC TANKSHIP/BARGE
- ☐ PUBLIC VESSEL, UNC
- ☐ RESEARCH VESSEL

- ☐ SCHOOL SHIP
- ☐ TANK BARGE
- ☐ TANK SHIP
- ☐ TOWING VESSEL
- ☐ UNCLASSIFIED VESSEL
- ☒ RECREATIONAL

**J.  PURPOSE OF APPLICATION**

- ☐ 1. EXCHANGE OF CERTIFICATE OF DOCUMENTATION.
- ☐ 2. REPLACEMENT OF LOST, WRONGFULLY WITHHELD OR MUTILATED CERTIFICATE OF DOCUMENTATION.
- ☐ 3. RETURN TO DOCUMENTATION FOLLOWING DELETION, NAME OF VESSEL WHEN LAST DOCUMENTED:
- ☒ 4. APPLICATION FOR OFFICIAL NUMBER AND FIRST CERTIFICATE OF DOCUMENTATION.  VESSEL
    - ☒ WAS BUILT AT _____WARREN_____ IN _____2008_____
    - **OR**
    - ☐ IS UNDER CONSTRUCTION AT _____ AND IS SCHEDULED FOR COMPLETION IN_____
    - **MONTH·YEAR**

HULL MATERIAL: ☐ WOOD   ☐ STEEL   ☒ FIBROUS REINFORCED PLASTIC   ☐ ALUMINUM   ☐ CONCRETE

    - ☐ OTHER (DESCRIBE) _____

APPROXIMATE LENGTH OF VESSEL _____48.1_____

PREVIOUS NAMES, NUMBERS, OR FOREIGN REGISTRATIONS OF VESSEL _____

**K.  CERTIFICATION: I (WE) CERTIFY THAT:**

(A) I AM (WE ARE) A CITIZEN(S) OF THE UNITED STATES AND LEGALLY AUTHORIZED TO EXECUTE THIS APPLICATION IN THE CAPACITY SHOWN;

(B) THAT THE VESSEL(S) TO WHICH THIS APPLICATION APPLIES;

   (i) ☐ HAS (HAVE) BEEN MARKED OR ☒ WILL BE MARKED

IN ACCORDANCE WITH THE DIRECTIONS IN THE INSTRUCTION SHEET (CG-1258-A) FOR THIS APPLICATION;

   (ii) WILL AT ALL TIMES REMAIN UNDER THE COMMAND OF A U.S. CITIZEN, UNLESS DOCUMENTED SOLELY WITH A RECREATIONAL ENDORSEMENT.

   (iii) WILL NOT BE OPERATED IN A TRADE NOT AUTHORIZED BY THE ENDORSEMENT(S) ON THE CERTIFICATE(S) OF DOCUMENTATION;

   (iv) HAS NOT BEEN REBUILT SINCE LAST DOCUMENTATION

   (v) THE VESSEL IS

   ☒ NOT TITLED UNDER A STATE OR ☐ IS TITLED UNDER THE LAWS OF _____

(C) THE NAME(S) OF THE VESSEL(S) WILL NOT BE CHANGED WITHOUT APPROVAL FROM THE NATIONAL VESSEL DOCUMENTATION CENTER; AND

(D) (WE) WILL PROMPTLY NOTIFY THE NATIONAL VESSEL DOCUMENTATION CENTER UPON A CHANGE IN ANY OF THE INFORMATION OR REPRESENTATIONS IN THIS APPLICATION.

(E.G., OWNER, AGENT, TRUSTEE, GENERAL PARTNER, CORPORATE OFFICER)

| PRINTED OR TYPED NAME | SIGNATURE | CAPACITY |
|---|---|---|
| WILLIAM C. KELLEHER | /s/ | OWNER |

DATE: 02/01/2008

**PRIVACY ACT STATEMENT**

IN ACCORDANCE WITH 5 U.S.C. 552a, THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD.
1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 U.S.C., CHAPTERS 121 AND 125; 46 U.S.C. APP. 802 AND 883.
2. THE PRINCIPAL PURPOSES FOR WHICH THIS INFORMATION IS TO BE USED ARE:
   (1) TO DETERMINE CITIZENSHIP OF THE OWNER OF THE VESSEL FOR WHICH APPLICATION FOR DOCUMENTATION IS MADE; AND
   (2) TO DETERMINE ELIGIBILITY OF THE VESSEL TO BE DOCUMENTED WITH THE TRADE ENDORSEMENT SOUGHT.
3. THE ROUTINE USES WHICH MAY BE MADE OF THIS INFORMATION INCLUDE RELEASE TO LAW ENFORCEMENT OFFICIALS, TO THE GENERAL PUBLIC UNDER FREEDOM OF INFORMATION ACT, AND TO PUBLISH INFORMATION ABOUT U.S. DOCUMENTED VESSELS.
4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY, HOWEVER, FAILURE TO PROVIDE THE INFORMATION REQUESTED WILL RESULT IN DENIAL OF THE APPLICATION FOR DOCUMENTATION, WHICH MAY PREVENT THE OWNER FROM OPERATING THE VESSEL(S) IN A SPECIFIED TRADE.
THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 30 MINUTES. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR MAKE SUGGESTIONS FOR REDUCING THE BURDEN TO: NATIONAL VESSEL DOCUMENTATION CENTER, 2039 STONEWALL JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419, OR OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF INFORMATION AND REGULATROY AFFAIRS, ATTENTION: DESK OFFICER FOR DOT/USCG, OLD EXECUTIVE OFFICE BUILDING , WASHINGTON, DC 20503.

*U.S. GPO 1997 -418-084/84215

U.S. DEPARTMENT OF TRANSPORTATION
UNITED STATES COAST GUARD

APPROVED OMB NO.
2115-0086

# APPLICATION FOR SIMPLIFIED MEASUREMENT

**Vessels that measure less than 5 net tons are not eligible for documentation. Only the following vessels may be measured by this SIMPLIFIED MEASUREMENT SYSTEM (46 CFR Part 69 Subpart E):**

    1. A vessel less than 79 feet in overall length;

    2. Barges and pleasure vessels (yachts) of any length used exclusively on the Great Lakes.

---

**I understand that, under the provisions of 46 CFR 69.25, a person making a false statement or representation in this application may be fined up to $20,000. The vessel also is liable in rem for the penalty. I certify that the information provided by me in answering the following questions is correct.**

**WILLIAM C. KELLEHER**
OWNER'S NAME (print or type)

SIGNATURE OF OWNER OR AGENT

---

1. Vessel Name **NEFTEGAZ**

2. Official No. _____

(If one has been assigned)

3. Hull No. or Hull Identification No: **PCX14018D606**

4. Shape of Hull   [X] Ship    [ ] Barge    [ ] Catamaran    [ ] Trimaran

5. Houseboat   [ ] Yes   [X] No     6. Hull Material **FIBERGLASS**

7. Self-propelled   [X] Yes   [ ] No

8. Engines in Hull [X] Yes   [ ] No     9. Sailboat [X] Yes [ ] No

10. (Sailboats Only)    Was depth measured to bottom of keel: [X] Yes [ ] No

---

## EXPLANATION OF VESSEL DIMENSIONS

**LENGTH** is the horizontal distance between the outboard side of the foremost part of the stem and the outboard side of the aftermost part of the stern, excluding rudders, outboard motor brackets, and other similar fittings and attachments.

**BREADTH** is the horizontal distance taken at the widest part of the hull, excluding rub rails, from the outboard side of the skin (outside planking or plating) on one side of the hull to the outboard side of the skin on the other side of the hull.

**DEPTH** is the vertical distance taken at or near midships from the line drawn horizontally through the uppermost edges of the skin (outside planking or plating) at the sides of the hull (excluding the cap rail, trunks, cabins and deckhouses) to the outboard face of the bottom skin of the hull, excluding the keel. If a vessel is designed for sailing and has the keel faired to the hull, the keel may be included in the depth if the distance to the bottom skin of the hull cannot be determined reasonably. When the keel is included in the depth the <u>Yes</u> blank in question 10 must be checked.

**NOTE:** (See reverse dimensions)

DEPT. OF TRANSP. USCG CG-5397 (REV. 10-89)

## 11. Furnish dimensions for sketch that most resembles the vessel's hull shape.

L - Length, B - Breadth, D - Depth                    *(Indicate in feet and inches)*

**SAILBOAT**

D1 only if actual hull depth (D) cannot be determined

L - _____ 48.1
B - _____ 13.0
D - _____ 6.1

D1 - _____

**SHIP-SHAPE HULL**

L - _____
B - _____
D - _____

**BARGE-SHAPED HULLS**

L - _____
B - _____
D - _____

**CATAMARAN**

L - _____
B - _____
D - _____
B1 - _____

**TRIMARAN**

L - _____
B - _____
D - _____
L1 - _____
B1 - _____
L2 - _____
B2 - _____
D1 - _____

**DECKHOUSES** Houseboats only (in addition to the hull dimensions also furnish the average deckhouse dimensions.)

L - _____
B - _____
D - _____